UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL C. and TERESIA S. GRUBBS, husband and wife; NORTH CASCADES NATIONAL BANK, a member of FDIC; DANIEL HAMMONS, individually and in his official capacity; ANN SMITH, individually and in official capacity; JOHN and JANE DOES I-X, individually and in official capacities,

    Defendants.

NO. CV-05-315-RHW

**ORDER GRANTING MOTION TO DISMISS**

Before the Court are Defendants North Cascades National Bank, Hammons, Smith, and John and Jane Does' Motion to Dismiss Plaintiff's Complaint (Ct. Rec. 17) and Defendants Michael and Teresia Grubbs' Joinder in Defendants' Motion to Dismiss Plaintiff's Complaint (Ct. Rec. 22). A hearing was held on January 25, 2007. Assistant United States Attorney Timothy Durkin appeared on behalf of the Government; Thomas Luciani and J. Kirk Bromiley represented Defendants. For the reasons stated below, the Court grants Defendants' motions.

## BACKGROUND

Plaintiff United States sued Defendants on October 11, 2005, alleging Defendants Grubbs, in agreement with and assistance from Defendants Hammons, Smith, North Cascades National Bank (NCNB), and John/Jane Does 1-10, submitted fraudulent financial information to the Farm Service Agency (FSA), a

ORDER GRANTING MOTION TO DISMISS * 1

division of the U.S. Department of Agriculture, to obtain FSA loans in the amount of $402,760.  The Government further alleges Defendants have failed and/or have refused to pay the loan proceeds they unlawfully obtained.  The Government asks for the amount of damages sustained plus treble damages, a civil penalty of up to $10,000 for each false claim, recovery of investigative costs, reasonable attorney's fees and court costs, all pursuant to the False Claims Act, 31 U.S.C. §§ 3729-33.  The Government also makes claims for violations of 18 U.S.C. §§ 1014, 1001, 1005, and 657 and asserts common law claims of unjust enrichment and misappropriation of funds.

## PROCEDURAL HISTORY

The FSA received a loan application for a $374,290 Emergency Loan and a $28,470 Operating Loan from Defendants Michael and Teresia Grubbs on April 9, 1999.  The Grubbs applied for that loan with the assistance of Defendant Hammons, a senior vice president of NCNB.  In conjunction with their application, Defendants filed loan verification information indicating the Grubbs' outstanding debts with NCNB totaled about $1,006,375.  The loan was originally not approved due to an inadequate debt to income ratio.  Defendants filed several updates to their statements on debts and collateral throughout 1999 and early 2000, and each time the FSA determined the Grubbs' debt to income ratio was financially deficient and denied their loan application.

The FSA finally approved a $374,290 Emergency Loan and a $28,470 Operating Loan to Defendants Michael and Teresia Grubbs on March 3, 2000.  Defendants NCNB and Hammons had recently filed additional information that improved the Grubbs' financial condition, and this led to the approval.   On April 9, 2002, after defaulting on the FSA and other outstanding loan obligations, the Grubbs Defendants filed for Chapter 11 relief in the Bankruptcy Court of the Eastern District of Washington.  The FSA filed a Proof of Claim, which included the loans made on March 3, 2000.  Defendant NCNB also filed a Proof of Claim in

relation to loans it had extended to the Grubbs. On October 21, 2002, the FSA filed a motion to dismiss the Grubbs' bankruptcy petition, alleging *inter alia* that the loans of March 3, 2000, were obtained through the submission of false financial information. The Bankruptcy Court issued an order denying that motion, without any explanation, on February 11, 2003.

On February 28, 2003, the FSA filed an Adversary Proceeding against Defendants Grubbs and NCNB. This claim related to its alleged entitlement to proceeds generated by the Grubbs' participation in other governmental programs—primarily the USDA's Apple Market Loss Assistance Program (AMLAP) for apple growing losses—and the FSA loans from March 2000 were identified as "prepetition debts" to which payments should be applied. Defendant NCNB claimed a similar interest and sought an identical offset against the Grubbs. Both parties moved for summary judgment seeking the Bankruptcy Court's determination of the priority of the FSA's and NCNB's claimed rights to off-set their loans using the AMLAP benefits. Before the motions were decided, the FSA, NCNB, and the Grubbs reached a settlement. The Bankruptcy Court entered a stipulated order of dismissal stating that "all claims which have been brought, or which could have been brought in this adversary proceeding, have been fully settled, and that the adversary proceeding shall be and hereby is dismissed with prejudice and without an award of costs or attorneys' fees to any party." (Ct. Rec. 19, Ex. B, at 3).

On April 13, 2004, the Bankruptcy Court formally approved the Grubbs' Chapter 11 Plan of Reorganization, which provided for the payment of the FSA loans in question. The Bankruptcy Court issued a final decree on May 26, 2004, terminating the Grubbs' bankruptcy case.

As stated above, the Government commenced this suit on October 11, 2005, alleging Defendants made false statements which prompted the FSA to make the March 3, 2000 loans described above.

ORDER GRANTING MOTION TO DISMISS * 3

**DISCUSSION**

Defendants claim the allegations forming the basis of the instant complaint are identical to those cited in support of Plaintiff's initial objection to the bankruptcy petition filed by the Grubbs. Defendants further argue Plaintiff is barred from pursuing such claims pursuant to *res judicata* because of (1) the Bankruptcy Court's denial of the FSA's motion to dismiss; (2) the stipulated dismissal in the adversary proceeding at the Bankruptcy Court; and/or (3) the confirmation of the Grubbs' reorganization plan. Additionally, Defendants state Plaintiff is estopped from pursuing claims which could have been resolved in the bankruptcy proceedings due to the scope of the claims dismissed in that court.

Plaintiff responds that its present claims are not related to the AMLAP benefits that were the subject of the FSA's adversarial action in the Grubbs' bankruptcy petition, and that the other basis for Defendants' *res judicata* defense must likewise fail.

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Res judicata* applies whenever there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

It is apparent from the bankruptcy filings that (1) the Government was aware of potential False Claims Act claims during the pendency of the bankruptcy proceedings; (2) the Government, NCNB, and the Grubbs were parties to the adversary proceeding; and (3) the stipulation settling the adversary proceeding specifically stated that "all claims which have been brought, or which could have been brought in this adversary proceeding, have been fully settled, and that the adversary proceeding shall be and hereby is dismissed with prejudice and without an award of costs or attorneys' fees to any party." The bankruptcy court had

ORDER GRANTING MOTION TO DISMISS * 4

jurisdiction over the Government's potential False Claims Act claims, *In re Cassidy*, 213 B.R. 673, 677-78 (Bankr. W.D. Ky. June 30, 1997) (holding the bankruptcy court "clearly does have jurisdiction over Plaintiff's False Claims Act claim under 28 U.S.C. §§ 157 and 1334"), so the pending claims "could have been brought" in the adversary proceeding before the Bankruptcy Court.

A judgment that is the result of parties' stipulation of settlement is considered a conclusive determination of the merits of that action for purposes of collateral estoppel, or *res judicata*, where "it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action." *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978) (citation omitted). Inclusion of the language, "all claims which have been brought, or which could have been brought in this adversary proceeding" in the stipulation clearly signals the parties' intention to include all claims, known and unknown, brought and not brought. The fact that the Government actually mentioned the factual basis of its False Claims Act claims in its motion to dismiss earlier in the bankruptcy proceeding only bolsters the Court's conclusion.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants North Cascades National Bank, Hammons, Smith, and John and Jane Does Directors and Officers' Motion to Dismiss Plaintiff's Complaint (Ct. Rec. 17) is **GRANTED**.

2. Defendants Michael and Teresia Grubbs' Joinder in Defendants' Motion to Dismiss Plaintiff's Complaint (Ct. Rec. 22) is **GRANTED**.

3. The above-captioned matter is **DISMISSED** with prejudice.

///
///
///
///

ORDER GRANTING MOTION TO DISMISS * 5

1     **IT IS SO ORDERED.** The District Court Executive is directed to enter this

2 Order, to forward copies to counsel, and to **close the file**.

3     **DATED** this 7th day of February, 2007.

4                                *s/ Robert H. Whaley*

5

6                             ROBERT H. WHALEY
                       Chief United States District Judge

10 Q:\CIVIL\2005\Grubbs\grant.dismiss.ord.wpd

ORDER GRANTING MOTION TO DISMISS * 6